NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNIVERSITY SPINE CENTER, *on assignment of Thomas P.*, <br><br>Plaintiff, <br><br>v. <br><br>AETNA, Inc., <br><br>Defendant. | Civil Action No.: 17-13654 (JLL) <br><br> **OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendant Aetna, Inc.'s Motion to Dismiss Plaintiff University Spine Center's Complaint pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 6). Plaintiff has submitted opposition and Defendant filed its reply thereto. (ECF Nos. 10, 11). For the reasons stated herein, the Court grants Defendant's Motion to Dismiss Plaintiff's Complaint.

## BACKGROUND[1]

On September 12, 2016, Plaintiff performed "a spinal fusion surgical procedure" on Thomas P. ("Patient"), who is insured by Defendant. (ECF No. 1 ("Compl.") ¶¶ 3–4). Plaintiff obtained an assignment of benefits from Patient in order to bring this claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002, *et seq.* (Compl. ¶ 5).

---

[1] This background is derived from Plaintiff's Complaint, which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

Plaintiff prepared Health Insurance Claim Forms requesting reimbursement from Defendant in the amount of $301,939.00 for the medical services provided by Plaintiff to Patient. (Compl. ¶ 6). However, Defendant only remitted payment in the amount of $7,005.55. (Compl. ¶ 7). Thereafter, Plaintiff engaged in the applicable administrative appeals process maintained by Defendant, but Defendant did not remit any additional payments. (Compl. ¶¶ 9–10).

Accordingly, Plaintiff brought this action, alleging the following claims: (1) Failure to Make All Payments Pursuant to Member's Plan Under 29 U.S.C. § 1132(a)(1)(B); and (2) Breach of Fiduciary Duty and Co-Fiduciary Duty Under 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1), and 29 U.S.C. § 1105(a). (Compl. ¶¶ 14–31). Plaintiff seeks to recover $174,289.26, which Plaintiff claims is the outstanding balance after "[t]aking into account any known deductions, copayments and coinsurance." (Compl. ¶¶ 12–13). Defendant now moves to dismiss Plaintiff's Complaint. (ECF No. 6).

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court must dismiss a complaint if it lacks subject matter jurisdiction. "Ordinarily, Rule 12(b)(1) governs motions to dismiss for lack of standing, as standing is a jurisdictional matter." *N.J. Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015). However, when statutory limitations to sue are non-jurisdictional, as is the case where a party claims derivative standing to sue under ERISA § 502(a), a motion to dismiss challenging such standing is "properly filed under Rule 12(b)(6)." *Id.* Regardless, "a motion for lack of statutory standing is effectively the same whether it comes under Rule 12(b)(1) or 12(b)(6)." *Id.* (citation omitted).

On a motion to dismiss for lack of standing, the plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter
2

on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "For the purpose of determining standing, [the Court] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the complaining party." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

## DISCUSSION

Under § 502 (a) of ERISA, "a participant or beneficiary" may bring a civil action to, *inter alia*, "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a). Accordingly, standing to sue under ERISA is "limited to participants and beneficiaries." *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400–01 (3d Cir. 2004) (holding that if plaintiff lacks standing to sue under ERISA, then the Court also lacks federal subject matter jurisdiction to hear the claim). As ERISA is silent on the issue of standing, Third Circuit precedent sets forth that a healthcare provider may bring a cause of action by acquiring derivative standing through an assignment of rights from the plan participant or beneficiary to the healthcare provider. *N.J. Brain & Spine Ctr.*, 801 F.3d at 372. "Healthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary." *Id.* (citing *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014)).

As a consequence, the issue presently before this Court hinges upon whether Patient successfully assigned his rights to Plaintiff under the terms of Defendant's insurance plan.

Defendant argues that any purported assignment of rights from Patient, the plan participant, is void since the applicable health benefits plan contains an anti-assignment clause that expressly prohibits Patient from assigning his rights and/or benefits. (ECF No. 6-1 at 2). Both parties agree that the anti-assignment clause in Defendant's insurance plan states as followed: "Coverage and [Patient's] rights under this plan may not be assigned. A direction to pay a provider is not an assignment of any right under this plan or of any legal or equitable right to institute any court proceeding." (ECF No. 6-1 at 6; ECF No. 10 at 10). Defendant claims that this clause prevents Patient from assigning his rights or benefits to Plaintiff and, therefore, Plaintiff cannot acquire the right to bring this action. (ECF No. 6-1 at 8).

In opposition, Plaintiff argues that it is not barred from bringing this action, because the anti-assignment clause only limits Patient's *right* to assign his rights or benefits to Plaintiff and not Patient's *power* to do so. (ECF No. 10 at 5–6). According to Plaintiff, the anti-assignment clause's limit on Patient's *right* to assign his rights or benefits to Plaintiff is essentially "a covenant not to assign" and any violations by Patient can be remedied by money damages, but does not void the purported assignment. (*Id.* at 5). Plaintiff argues that the only way that Patient could be prevented from assigning his rights or benefits to Plaintiff is if the anti-assignment clause expressly limits Patient's *power* to do so, which the anti-assignment clause here does not. (*Id.* at 6). In making this argument, Plaintiff relies on a Third Circuit case that does not pertain to ERISA and that applies New Jersey law. *See Bel-Ray Co. v. Chemrite (PTY) Ltd.*, 181 F.3d 435, 442 (3d Cir. 1999).

Plaintiff further argues that the anti-assignment clause is unenforceable against it as a health care provider, relying on a decision from the Court of Appeals for the Fifth Circuit. (ECF No. 10 at 11–13). That Fifth Circuit decision interpreted anti-assignment clauses, such as the one

4

at issue here, to apply only to third-party assignees who may obtain assignments to cover unrelated debts. *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569, 575 (5th Cir. 1992) ("We interpret the anti-assignment clause as applying only to unrelated, third-party assignees—other than the health care provider of assigned benefits—such as creditors who might attempt to obtain voluntary assignments to cover debts having no nexus with the Plan or its benefits, or even involuntary alienations such as attempting to garnish payments for plan benefits."), *overruled on other grounds by Access Mediquip, L.L.C. v. United Health Care Ins. Co.*, 698 F.3d 229 (5th Cir. 2012).

The Court rejects both of Plaintiff's arguments because they are contrary to the recognized law in this district. Though the Third Circuit has not specifically spoken on the enforceability of anti-assignment clauses in ERISA-governed plans, a majority of circuits, as well as courts in the Third Circuit, have given effect to anti-assignment provisions such as the one in this case and denied standing. *See, e.g., Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1296 (11th Cir. 2004) ("[A]n unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable."); *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 353 (5th Cir. 2002) (reversing the district court and holding that anti-assignment clause in ERISA plan was enforceable and distinguishing *Hermann Hosp.*, 959 F.2d at 575); *City of Hope Nat'l Med. Ctr. v. HealthPlus Inc.*, 156 F.3d 223, 229 (1st Cir. 1998) ("[W]e hold that ERISA leaves the assignability or non-assignability of health care benefits under ERISA-regulated welfare plans to the negotiations of the contracting parties."); *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc.*, 49 F.3d 1460, 1465 (10th Cir. 1995) ("ERISA's silence on the issue of assignability of insurance benefits leaves the matter to the agreement of the contracting parties."); *Davidowitz v. Delta Dental*

*Plan, Inc.*, 946 F.2d 1476, 1481 (9th Cir. 1991) ("The court concludes that ERISA welfare plan payments are not assignable in the face of an express non-assignment clause in the plan."); *Advanced Orthopedics & Sports Med. v. Blue Cross Blue Shield of Mass.*, No. 14-7280 (FLW), 2015 U.S. Dist. LEXIS 93855, at *9 (D.N.J. July 20, 2015) ("[C]ourts routinely enforce anti-assignment clauses contained in ERISA-governed welfare plans."); *Prof'l Orthopedic Assocs., PA v. CareFirst BlueCross BlueShield*, No. 14-4486 (MAS), 2015 U.S. Dist. LEXIS 84996, at *10 (D.N.J. June 30, 2015) ("[T]he majority of circuits addressing the [anti-assignment enforceability] question as well as other courts in this district have considered the issue and held such provisions to be enforceable."); *Specialty Surgery of Middletown v. Aetna*, No. 12-4429 (JLL), 2014 U.S. Dist. LEXIS 85371, at *10 (D.N.J. June 24, 2014) ("Courts in the District of New Jersey have thus far held that unambiguous anti-assignment provisions in group healthcare plans are valid and enforceable."). Therefore, a clear and unambiguous anti-assignment clause is enforceable against Plaintiff and will void any purported assignment of Patient's rights or benefits.

Plaintiff asserts that the anti-assignment clause is ambiguous. (ECF No. 10 at 10). Specifically, Plaintiff attempts to parse the first and second sentences of the anti-assignment clause. (*Id.*). According to Plaintiff, when the sentences are read separately, the anti-assignment clause does not clearly state that the "coverage" or "rights" under the plan may not be assigned to a provider. (*Id.*). However, the Court disagrees, after carefully reviewing the anti-assignment clause, and finds it to be clear and unambiguous. As noted above, under the anti-assignment clause: "Coverage and [Patient's] rights under this plan may not be assigned. A direction to pay a provider is not an assignment of any right under this plan or of any legal or equitable right to institute any court proceeding." (ECF No. 6-1 at 6).

6

As the Third Circuit has explained, contracts must be read as a whole, rather than in isolation. *See Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011) (citing *Hardy ex rel. Dowdell v. Abdul-Matin*, 198 N.J. 95, 100–102 (2009)). When reading the anti-assignment clause as a whole, it is obvious that the first sentence of the anti-assignment clause prohibits any assignment of benefits under the plan. The second sentence, which according to Plaintiff, renders the entire anti-assignment clause ambiguous, merely provides further explanation that direction to pay a provider directly does not constitute an assignment of benefits. As such, the Court concludes that the anti-assignment clause is not ambiguous and therefore is enforceable. *See Progressive Spine & Orthopedics, LLC v. Anthem Blue Cross Blue Shield*, No. 17-536 (KM)(MAH), 2017 U.S. LEXIS 147466, at *16–17 (D.N.J. Sept. 11, 2017) (upholding similar anti-assignment clause language). As the Court acknowledged above, and has acknowledged in several previous opinions, *see, e.g., Univ. Spine Ctr. v. Aetna Inc.*, Civil Action No. 17-7825 (JLL), 2017 U.S. Dist. LEXIS 209101, at *7 (D.N.J. Dec. 19, 2017), a valid and enforceable anti-assignment clause, like the one in this case, prevents Patient from assigning his rights or benefits to Plaintiff. In the absence of an assignment from Patient, Plaintiff does not have standing to bring this action. Accordingly, Plaintiff's Complaint must be dismissed.

## CONCLUSION

For the aforementioned reasons, Defendant's Motion to Dismiss Plaintiff's Complaint is hereby granted. An appropriate Order accompanies this Opinion.

Date: April __11__, 2018

JOSE L. LINARES
Chief Judge, United States District Court

7